HALL, Chief Judge.
In January, 1984, National Oil and Gas Company of Florida, a Florida corporation authorized to do business in the state of Louisiana, filed suit in the District Court of Ouachita Parish against Roy M. Teel, Sr., a resident of Oklahoma, Brian Mark, Inc., and H.G.T., Inc., Oklahoma corporations,[1] seeking to recover interest payments allegedly due under a compromise agreement executed by the parties and others in 1982 in Monroe, Louisiana. The compromise agreement was executed in settlement of a lawsuit pending in the Ouachita Parish District Court and another lawsuit pending in the United States District Court for the northern district of Alabama. Both suits involved oil and gas properties located in Alabama.
Service was made on the nonresident defendants under the Louisiana Long-Arm Statute, LSA-R.S. 13:3201 et seq. Defendants filed a declinatory exception of lack of personal jurisdiction which, after a hearing, was sustained. Plaintiffs suit was dismissed and plaintiff appealed. For reasons set forth in this opinion, we reverse, overrule the exception, and remand.
BACKGROUND FACTS
Joseph G. Strahan, a resident of Ouachi-ta Parish who was engaged in the oil and gas business, originated oil and gas prospects and acquired numerous leases in Alabama. Strahan entered into an agreement with W.J. Wegman, Jr., a Florida resident who was president of National Oil and Gas Company of Florida, for development of some of the leases. Strahan died in 1979 and in April, 1980, his estate assigned his interest in the Alabama mineral properties to Richard A. Bennett, Jr., a resident of Washington, D.C., who immediately assigned those interests to the defendant Teel. Teel acquired an additional interest in the Alabama leases from Morris Blumen- *774 thal, a Louisiana resident, by an agreement in Monroe in December, 1980.
In October, 1980, National Oil and Gas Company of Florida filed suit in the Oua-chita Parish District Court against Strahan Oil and Gas Company and the widow and executrix of the succession of Strahan seeking damages allegedly arising out of a breach of the agreement for development of the Alabama leases. Teel and the Oklahoma corporations, defendants in the present action, were not made parties to that suit. Wegman and/or National Oil and Gas Company of Florida also filed suit in federal court in Alabama against Teel, who was the assignee of the Strahan interest in the Alabama leases.
On May 21, 1982, a compromise agreement was executed by all of the parties to the pending lawsuits, including the plaintiff and the defendants in the present action. The agreement provided for the payment of $25,000 cash by Strahan to National Oil and Gas Company. The agreement also provided for the transfer by National Oil and Gas Company and Wegman of all of their interests in the Alabama oil and gas properties to Teel in consideration of $90,-000 to be paid by Teel to National Oil and Gas Company out of production from the mineral leases located in Alabama. The agreement provided that if the $90,000 was not paid from production, then certain interest payments on that amount would be due. The agreement did not specify where the payments were to be made. The present suit is for recovery of interest payments allegedly due under the compromise agreement.
Strahan and National Oil and Gas Company were represented by Louisiana attorneys and Teel was represented by Alabama attorneys in the previous litigation and the compromise thereof. The parties, including the defendant Teel, and their attorneys met in Monroe, Louisiana to finalize negotiations and to draft and execute the compromise agreement. According to testimony by Strahan’s attorney, it was necessary as a practical matter to settle both suits together, and the compromise was finalized and signed by the parties in Monroe as the most convenient place to meet.
At one time Teel owned extensive oil and gas interests in the State of Louisiana, but he sold most of those interests in the latter part of 1980, retaining only minimal property interests in the State of Louisiana.
TRIAL COURT DECISION
In sustaining defendants’ declinatory exception to the court’s jurisdiction, the district court held that the defendants were neither transacting business in the State of Louisiana nor contracting to supply services in this state. The court found that although defendant may have previously transacted business in this state and may still have minor contacts in this state unrelated to the present litigation, the defendant’s prior business transactions and his remaining contacts have no connection with the compromise agreement. The court found that the defendant negotiated and signed the compromise agreement in Monroe as a matter of convenience to the parties involved in the Louisiana litigation. The court held that the mere execution of the agreement in Louisiana for convenience was not sufficient contact with the State to support jurisdiction over the defendants in this action and that to require defendants to defend the action in this state would offend traditional notions of fair play and substantial justice.
PERSONAL JURISDICTION
LSA-R.S. 13:3201 provides that a court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of several enumerated activities, including “transacting any business in this state.” LSA-R.S. 13:3202 provides that when personal jurisdiction over a nonresident is based solely upon LSA-R.S. 13:3201, only a cause of action arising from acts or omissions enumerated therein may be asserted against him. Comment (d) following § 3201 explains the broad scope intended to be given to “transacting any business.” As used in the statute, the term is much broader than “doing business” as defined by earlier Louisiana cases *775 and is intended to mean a single transaction of either interstate or intrastate business and to be as broad as the phrase “engaged in a business activity.”
The long-arm statute is intended to encompass the maximum jurisdictional outreach allowable under the due process clause of the Fourteenth Amendment to the United States Constitution. Fryar v. West Side Habilitation Center, 479 So.2d 883 (La.1985); Drilling Eng. Inc. v. Independent Indon. Amer. Pet. Co., 283 So.2d 687 (La.1973). The due process requirements were explained in the Fryar case as follows:
The basic due process requirement for jurisdiction over a person is minimum contacts with the forum state. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). An individual is not subject to the jurisdiction of a forum with which he has established no “contacts, ties or relations” International Shoe Company v. Washington, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104. The contacts with the forum state cannot be “isolated”, “fortuitous”, or “attenuated”. There must be a substantial connection between the defendant’s activities and the forum state, but physical entry into the forum state is not essential. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Plaintiffs residence is not irrelevant to the inquiry, because defendant’s relationship with plaintiff may enhance defendant’s contacts with the forum. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).
A person must have fair warning that an activity may subject him to foreign jurisdiction. Burger King, supra. This allows a potential defendant some assurance as to where he will be liable to suit. World-Wide Volkswagen Corporation v. Woodson [444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ], supra; Burger King, supra. The requirement of fair warning is satisfied when a defendant has purposefully directed his activities at a resident of the forum, and the litigation results from foreseeable injuries arising out of or relating to those activities. International Shoe, supra; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Burger King, supra.
A nonresident party to a contract consummated in the forum state is subject to the forum state’s in personam jurisdiction on causes of action arising out of the transaction. McGee v. International Life Ins. Co., [355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)], supra; Burger King, supra. Compare Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)....
When minimum contacts are present, they must be balanced with other factors to determine whether personal jurisdiction affords substantial justice, is reasonable and compatible with fair play. International Shoe Company v. Washington, supra; Schaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); World-Wide Volkswagen Corporation v. Woodson, supra; Burger King, supra; Restatement (2d) of Conflict of Laws, §§ 36, 37 (1971). Factors to be evaluated include the burden on the defendant, the forum state’s interest, the plaintiff’s interest, the system’s interest in obtaining the most efficient resolution of controversies, and the furtherance of fundamental substantive social policies. World-Wide Volkswagen Corp. v. Woodson, supra; Burger King, supra.
The extent to which a contract can constitute a “contact” was discussed in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, at 2185, 85 L.Ed.2d 528 (1985) as follows:
We note a continued division among lower courts respecting whether and to what extent a contract can constitute a “contact” for purposes of due process analysis. If a question is whether an individual’s contact with an out-of-state party alone can automatically establish minimum contacts in the other parties home forum, we believe that the answer *776 is clearly that it cannot. The court long ago rejected the notion that personal jurisdiction might turn on “mechanical” tests, International Shoe Co. v. Washington, 326 U.S., at 319, 66 S.Ct., at 159 “or on conceptualistic ... theories of the place of contracting or of performance,” Hoopeston Canning Co. v. Cullen, supra, 318 U.S. [313], at 316, 63 S.Ct. [602], at 604 [87 L.Ed. 777 (1943)]. Instead, we have emphasized the need for a “highly realistic” approach that recognizes that a “contract” is “ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.” Id. at 316-317, 63 S.Ct., at 604-605. It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.
It has been held that in order to determine whether a Louisiana court has personal jurisdiction over a nonresident defendant, a dual inquiry must be made: first, whether the Louisiana long-arm statute provides for the assertion of jurisdiction in the context of the facts of the case; and second, whether the assertion of jurisdiction by Louisiana is constitutionally permissible, that is, whether the defendant had sufficient minimum contacts to. satisfy due process standards and whether the exercise of personal jurisdiction over the defendant would be consonant with traditional notions of fair play and substantial justice. McBead Drilling Company v. Kremco, LTD., 490 So.2d 674 (La.App. 2d Cir.1986); Robinson v. Vanguard Insurance Company, 468 So.2d 1360 (La.App. 1st Cir.1985), writs denied 472 So.2d 34 (La.1985), 472 So.2d 924 (La.1985).
Because the Louisiana statute is intended to encompass the maximum jurisdictional outreach permissible under due process, the focus of the inquiry, assuming the transaction of any business activity whatsoever within the state, is on compliance with the due process requirements.
In the present case, the defendants clearly transacted business within the State of Louisiana. Teel, individually and on behalf of the corporations, purposefully came into the state and participated in the negotiation, drafting a execution of a contract concerning their oil and gas business interests. The other parties to the contract were a Florida corporation authorized to do and doing business in Louisiana, and Louisiana residents. Defendant’s argument that the transaction was done in Louisiana merely for convenience does not alter the fact that business was transacted in Louisiana. Business is usually transacted at the place most convenient to the parties. Defendant’s argument that the compromise agreement related only to the settlement of litigation and was not a business transaction is also without merit. The litigation involved business disputes and the agreement went beyond the dismissal of the lawsuits, providing for the transfer of interests in business properties and payment of substantial sums of money.
By participating in the negotiation, drafting, and execution of a business contract in Louisiana, defendants transacted business in this state. See Adcock v. Surety Research & Inv. Corp., 344 So.2d 969 (La.1977); Drilling Eng. Inc. v. Independent Indon. Amer. Pet. Co., supra. The cause of action asserted in this case arises out of the transacting of business in this state, that is, out of the contract negotiated and executed in this state. The Louisiana court has personal jurisdiction over the defendants under the long-arm statute if the exercise of jurisdiction is consonant with due process standards.
Teel was engaged in the oil and gas business, previously had substantial interests in Louisiana, and continues to have interests, although minimal. He came to Louisiana and negotiated, drafted, and executed a contract with a corporation authorized to do and doing business in Louisiana. A foreign corporation which has received a *777 certificate of authority to do business in this state enjoys the same rights and privileges as a corporation organized under the laws of this state. LSA-R.S. 12:306. An integral part of the agreement was the settlement of the lawsuit pending in Louisiana, even though Teel and the corporate defendants were not parties to that suit.
Teel had sufficient minimum contacts with Louisiana to satisfy due process standards of fair play and substantial justice. He had a history of doing substantial oil and gas business in Louisiana, still had some interests in Louisiana, and, pursuant to his oil and gas business, entered into the present contract in Louisiana with a corporation authorized to do and doing business in Louisiana. The contract provided for a continuing relationship between defendants and the plaintiff, the payment of money over a period of time. There was subsequent correspondence between the defendants’ representatives and the plaintiff’s Louisiana attorney. The defendants could reasonably expect to be haled into a Louisiana court upon their failure to make payments due under the agreement.
Louisiana has an interest in the enforcement of a contract entered into in this state in compromise of litigation pending in this state by a nonresident with a corporation authorized and doing business in this state which is entitled to all of the rights and privileges of a Louisiana corporation. There is no undue burden or unfairness to this defendant who operates in several states, including Louisiana, to require him to defend this suit in Louisiana. The business transaction in Louisiana giving rise to this suit was not isolated, but was one in a long history of business transactions by the defendant in this state. The controversy can be as efficiently resolved in Louisiana as in any other state.
There were sufficient minimum contacts by the defendants with Louisiana and the exercise of jurisdiction by the Louisiana court in this case does not offend traditional notions of fair play and justice.
DECREE
For the reasons assigned, the judgment of the district court is reversed and set aside. The declinatory exception of lack of personal jurisdiction is overruled. The case is remanded to the district court for further proceedings in accordance with law. Costs of this appeal are assessed to the defendants-appellees.
JUDGMENT REVERSED AND SET ASIDE, DECLINATORY EXCEPTION OVERRULED, AND CASE REMANDED FOR FURTHER PROCEEDINGS.

. Teel died after commencement of this action and his executor, Roy M. Teel, Jr., was substituted as a party defendant. The defendant corporations were apparently controlled by Teel and his family and were liquidated prior to the instant litigation.