IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 22, 2008 Session

## EXEL TRANSPORTATION SERVICES, INC.
v.
## INTER-EGO SYSTEMS, INC. d/b/a PINNACLE LOUDSPEAKERS a/k/a PINNACLE SPEAKERS

**Appeal from the Chancery Court for Shelby County**
**No. CH-06-0427-3     Kenny W. Armstrong, Chancellor**

**No. W2007-01902-COA-R3-CV - Filed December 18, 2008**

This appeal involves a dismissal for lack of personal jurisdiction. The plaintiff transportation company has its principal place of business in Tennessee. It provided transportation services and financing to the defendant foreign corporation. The defendant eventually defaulted on payments due to the plaintiff. After negotiations by telephone, fax, and email, the parties agreed to a payment plan to bring the defendant's account current. They executed a letter agreement confirming the arrangement. Subsequently, the Tennessee plaintiff realized that a substantial amount of the services it had rendered to the defendant foreign corporation were inadvertently not included in the letter agreement. The Tennessee plaintiff filed a lawsuit in Tennessee against the foreign corporation, seeking rescission or reformation of the agreement. The defendant foreign corporation filed a motion to dismiss for lack of personal jurisdiction. The trial court granted the motion to dismiss, finding that the defendant foreign corporation had not purposely availed itself of the privilege of doing business in Tennessee and did not have sufficient contacts with Tennessee to be subjected to jurisdiction in this state. We affirm, finding that the circumstances do not support the exercise of either general or specific jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and WALTER C. KURTZ, SP. J., joined.

Allan B. Thorp, Memphis, Tennessee, for the Plaintiff/Appellant Exel Transportation Services, Inc.

Bruce M. Smith and Charmiane G. Claxton, Memphis, Tennessee, for the Defendant/Appellee Inter-Ego Systems, Inc. d/b/a Pinnacle Loudspeakers a/k/a Pinnacle Speakers

## OPINION

### FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellant Exel Transportation Services, Inc. ("Exel") is a Delaware corporation with its principal place of business in Memphis, Tennessee. Exel is a transportation broker; it provides transportation services for its customers. Defendant/Appellee Inter-Ego Systems, Inc. d/b/a Pinnacle Loudspeakers a/k/a Pinnacle Speakers ("Pinnacle") is a New York corporation with its principal place of business in Plainview, New York.

In approximately December 2002, Exel contacted Pinnacle in New York to offer Pinnacle its services. In order to obtain Exel's services, Pinnacle submitted a credit application to Exel's Memphis-based credit department. Pinnacle's credit application was approved, and Exel began providing Pinnacle freight forwarding services from companies in Asia that supplied components to Pinnacle's warehouses in California and New York, as well as related management services. These services were provided out of Exel's office in Totowa, New Jersey. This arrangement continued until approximately January 2005.

In February 2005, Pinnacle defaulted under the terms of its credit arrangement with Exel. On February 24, 2005, the accounting manager in Exel's collections department in Memphis, Gale McDonald ("McDonald"), called Pinnacle's Plainview, New York office. She spoke with Pinnacle's vice president, Marc Rothenberg ("Rothenberg"). Rothenberg asked McDonald to send him a list of invoices reflecting the services for which Pinnacle had not paid; McDonald complied with the request. In a later telephone call in March 2005 between Rothenberg and McDonald, Rothenberg proposed a schedule for Pinnacle to pay off the overdue amounts. McDonald did not have authority to accept the proposal for Exel, so the message was conveyed to Exel's chief financial officer, Andrew Hadland ("Hadland"), in Exel's Memphis office. Hadland rejected Rothenberg's initial offer. This was followed by further negotiation between Hadland and Rothenberg, via email discussions, facsimiles, and telephone calls. Ultimately, they agreed that Pinnacle would pay Exel the amounts owed over a twenty-four-month period.

In April 2005, McDonald sent Rothenberg a letter setting out the terms of the proposed agreement. McDonald's letter was on Exel letterhead, and bore Exel's Memphis address. It stated:

> This letter confirms our agreement to satisfy the balance remaining due to Exel Transportation Services, Inc. for freight charges, as follows:
>
> 1. According to our records the balance of the Account is $179,794.56.
> 2. . . . Payments shall be in cash or certified checks or electronic funds transfer, are to be received by Exel by the due date in care of Exel at: Bank Of America, PO Box 844711, Dallas, TX 75284-4711. If you overnight payment, the physical is: Bank Of America ATTN: Remittance Processing, TX 1-099-05-03, 1401 Elm Street, Dallas, TX 75202-2911.

. . .
> If these terms are acceptable, please sign and date below and return this letter to me.

The letter was signed by McDonald.

In response, Rothenberg did not sign McDonald's letter in the original form, but instead proposed revisions to the letter agreement. The changes Rothenberg made to the letter are italicized:

> 1.  According to our records the balance of the Account is $179,794.56 *(the "Receivable Amount"). The parties acknowledge and agree that the Receivable Amount is the total amount due and owing from Pinnacle Loudspeakers to Exel Transportation and that no other sums are due and owing*.

The rest of the letter remained substantially the same. McDonald signed the letter as altered by Rothenberg.

Subsequently, after executing the letter agreement on payment of Pinnacle's outstanding debt to Exel, McDonald learned that Pinnacle in fact owed Exel an additional $234,126.82 for transportation services. At the time that McDonald was negotiating with Pinnacle on Exel's behalf, this amount had not yet appeared on Exel's accounts receivables records. Pinnacle apparently declined to add this amount to the overall indebtedness in the previously executed letter agreement.

Consequently, Exel filed a lawsuit against Pinnacle in the Chancery Court in Shelby County, Tennessee, seeking rescission or reformation of the letter agreement. Exel's complaint alleged that Pinnacle was amenable to service of process under Tennessee's "Long Arm Statutes," Tennessee Code Annotated § 20-2-201 et seq.

Pinnacle responded, pursuant to Rule 12.02(2) of the Tennessee Rules of Civil Procedure, with a motion to dismiss for lack of personal jurisdiction. In the motion, Pinnacle argued that it had insufficient contacts with Tennessee for the court to exercise general jurisdiction, and that it had not purposely directed its activities toward citizens of Tennessee in such a manner that the court could exercise specific jurisdiction.

In support of its motion to dismiss, Pinnacle filed a memorandum of law and the affidavit of Marc Rothenberg. Rothenberg's affidavit explained that Pinnacle acquires speakers and speaker components from companies in China, Taiwan, and India. These items are then shipped to U.S. ports in New York and California. The goods shipped to New York are stored at Pinnacle's warehouse in Plainview; the goods shipped to California go to Pinnacle's warehouse in Oakland, California. From the New York and California warehouses, Pinnacle's speakers and components are shipped, via common carriers that are selected and paid by Pinnacle, to independent distributors. From the independent distributors, the goods go to authorized dealers located throughout the country. In his affidavit, Rothenberg stated that none of the distributors were located in Tennessee.

Rothenberg indicated in his affidavit that Pinnacle hired Exel to "handle the logistics of transportation" from the Asian companies to the warehouses in California and New York, including customs clearance and ground transportation from the port to the warehouse. Invoices from Exel requested that payments be made to Dallas, Texas; Lake Hapacong, New Jersey; or Memphis. Of nineteen payment checks made out to Exel, Pinnacle mailed thirteen to Memphis. Most of Pinnacle's communications with Exel occurred via Exel's Wayne, New Jersey office. Rothenberg asserted that Pinnacle had no employees or agents for service of process in Tennessee, and that Pinnacle had not done business in Tennessee within the last fifteen years.

Exel filed a response, arguing that the Tennessee court had personal jurisdiction over Pinnacle. Exel submitted to the trial court the affidavit of Gale McDonald. McDonald asserted in the affidavit that Pinnacle in fact had several authorized dealers in Tennessee. The affidavit noted that Pinnacle maintained a toll-free phone number and a website, both of which could be accessed by anyone in Tennessee. McDonald claimed that she spoke with an authorized Pinnacle dealer in Tennessee who sent her a brochure on Pinnacle products. Exhibits were attached to McDonald's affidavit to corroborate her assertions. McDonald further alleged that, when the parties began doing business, Pinnacle sent its credit application to Exel's credit department in Memphis.

In reply to Exel's response, Pinnacle filed a second affidavit from Rothenberg in which he provided additional information about the parties' relationship and disputed some of McDonald's claims. As additional information, Rothenberg asserted that an Exel representative initiated the relationship between the parties when this representative contacted Pinnacle to offer transportation services. He explained that Pinnacle's designation of Tennessee dealers as "authorized dealers" created no legal relationship between Pinnacle and the dealer because the independent distributers, not Pinnacle, made such designations. Rothenberg also disputed some of McDonald's assertions. First, he claimed that Pinnacle's credit application was faxed to Exel's New Jersey office, not its Memphis office. Second, he stated that Pinnacle had no record of any sales of its speakers in Tennessee.

In an order dated August 16, 2007, the trial court granted Pinnacle's motion to dismiss. The trial court stated:

> This cause came to be heard upon the Motion of the Defendant [Pinnacle], Response of the Plaintiff [Exel], Defendant's Reply to Plaintiff's Response, Plaintiff's Sur Reply, briefs of the attorneys, and exhibits filed herein, the case authorities cited and the entire record, from all of which it appears to the Court that the Defendant did not purposefully avail itself of the privilege of conducting business in this state. The Court further finds that the quality, nature and extent of the Defendant's contacts with this state are not sufficient to subject the Defendant to in personam jurisdiction in this state.

The trial court therefore dismissed Exel's lawsuit against Pinnacle, and assessed costs against Exel. Exel filed a timely notice of appeal.

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

On appeal, Exel argues that the Tennessee trial court had general and specific jurisdiction to adjudicate its lawsuit against Pinnacle, and that it erred in granting Pinnacle's motion to dismiss. Exel maintains that the facts support a finding of jurisdiction in that (1) Pinnacle sought the letter agreement with Exel, located in Tennessee; (2) Pinnacle negotiated the letter agreement with Exel in Tennessee; (3) Pinnacle changed the letter agreement to add the mistaken term; and (4) Pinnacle sent the changed letter to be signed by Exel in Tennessee.

Although both parties filed affidavits in connection with the motion to dismiss, we do not treat the motion as one for summary judgment. *Chenault v. Walker*, 36 S.W.3d 45, 55 (Tenn. 2001) (citing *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 561 n.1 (Tenn. 1981)); *but see* Tenn. R. Civ. P. 12.03. When a defendant raises a jurisdictional challenge under Rule 12.02(2) and files accompanying affidavits, "the plaintiff must establish a prima facie showing of jurisdiction by responding with its own affidavits and, if useful, other written evidence." *Chenault*, 36 S.W.3d at 56 (citations omitted). The court will "take as true the allegations of the nonmoving party and resolve all factual disputes in its favor." *Id.* (citations omitted). The court should not, however, "credit conclusory allegations or draw farfetched inferences." *Id.* (citation omitted). Legal issues are resolved by *de novo* review of the record with no presumption that the lower court's decision was correct. Tenn. R. App. P. 13(d); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

## ANALYSIS

For a court to exercise personal jurisdiction over a defendant, the assertion of jurisdiction under the facts of the case must have a statutory basis and must be permissible under the state and federal constitutions. *See, e.g., Nat'l Oil & Gas Co. of Fla. v. Teel*, 493 So. 2d 772, 776 (La. Ct. App. 1986); *accord J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531 (Tenn. 1992). In Tennessee, the exercise of such jurisdiction is governed by Tennessee's long-arm statute, Tennessee Code Annotated § 20-2-214(6).[1] Tennessee's long-arm statute has been interpreted to have "expanded the

---

[1] Section 20-2-214 states:

(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

    (1) The transaction of any business within the state;

    (2) Any tortious act or omission within this state;

    (3) The ownership or possession of any interest in property located within this state;

    (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

    (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

    (6) Any basis not inconsistent with the constitution of this state or of the United States;

    . . .

(b) "Person," as used herein, includes corporations and all other entities which would be subject to

(continued...)

jurisdiction of Tennessee courts to the full limit allowed by due process." *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985) (citing *Shelby Mut. Ins. Co. v. Moore*, 645 S.W.2d 242, 245 (Tenn. Ct. App. 1981)). In this context, due process under the Tennessee Constitution "is synonymous with the due process clause of the Fourteenth Amendment to the United States Constitution." *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997) (quoting *Newton v. Cox*, 878 S.W.2d 105, 110 (Tenn. 1994)). Consequently, our analysis of whether the lower court had jurisdiction to adjudicate the rights of Pinnacle is primarily an analysis of due process under the federal Constitution.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Exercising personal jurisdiction within the bounds of due process requires that, if the defendant is not present within the forum, "he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe*, 326 U.S. at 316 (citations omitted). In *International Shoe*, the Supreme Court provided a framework for analyzing a corporate defendant's contacts with the forum state. First, a defendant can be considered present in a state, and therefore subject to personal, or *in personam*, jurisdiction if its activities "have not only been continuous and systematic," but also gave rise to the cause of action. *Id.* at 317. Second, the exercise of jurisdiction is not proper if the corporate defendant has had only a casual presence and isolated activities in the state, provided the cause of action is not connected to such activities. *Id.* Third, the exercise of jurisdiction is proper if the defendant's continuous activities in the state have been "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 318. Finally, the Court recognized that jurisdiction may exist based on "some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation," because "their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit." *Id.*

In the subsequent cases of *Perkins v. Benguet Consol. Mining Co.*, 324 U.S. 437 (1952) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), the Supreme Court explained the principle that "when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros*, 466 U.S. at 414 (citing *Perkins*, 342 U.S. 437). This subset

---

[1](...continued)
service of process if present in this state.

T.C.A. § 20-2-214(a), (b) (1994). Despite the cumbersome manner in which subpart (a)(6) was added to the long-arm statute, our courts have repeatedly stated that the amendment converted the statute "from a 'single act' statute to a 'minimum contacts' statute." *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985); *see also W.B. Dunavant & Co. v. Perkins*, 498 S.W.2d 905, 909 (Tenn. 1973); *United Agric. Servs., Inc. v. Scherer*, 17 S.W.3d 252, 256 (Tenn. Ct. App. 1999); *Shelby Mut. Ins. Co. v. Moore*, 645 S.W.2d 242, 246 (Tenn. Ct. App. 1981). Although the statement from the *Masada* court was obiter dictum, the principle behind the statement has been widely accepted.

of personal jurisdiction has come to be known as "general jurisdiction." **Id.** at 415 n.9 (citations omitted); **see also United Agric. Servs., Inc. v. Scherer**, 17 S.W.3d 252, 256 (Tenn. Ct. App. 1999). It harkens back to the language in the third part of the **International Shoe** framework. **See Int'l Shoe**, 326 U.S. at 318 (the defendant's activities have been "so substantial and of such a nature as to justify suit against it . . . arising from dealings entirely distinct from those activities.").

In contrast, "specific jurisdiction" is exercised when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." **Helicopteros**, 466 U.S. at 414 n.8; **see also United Agric. Servs.**, 17 S.W.3d at 256. If a forum seeks to exercise specific jurisdiction over a foreign corporate defendant, the requirement that the defendant have "fair warning" that its activities may subject it to suit in that forum is satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." **Burger King**, 471 U.S. at 472 (citing **Helicopteros**, 466 U.S. at 414) (internal citation omitted). The defendant's contacts in the forum State must be sufficiently extensive that the defendant "should reasonably anticipate being haled into court there." **Masada**, 697 S.W.2d at 334 (quoting **World-Wide Volkswagen Corp. v. Woodson**, 444 U.S. 286, 297 (1980)).

In the case at bar, Exel asserts that the facts are sufficient to justify the exercise of general jurisdiction and, in the alternative, specific jurisdiction. We first examine whether Pinnacle's contacts with Tennessee were sufficient to support the exercise of general jurisdiction.[2]

We consider Pinnacle's general business dealings, focusing on contacts with Tennessee before execution of the letter agreement. In reviewing the affidavits submitted by the parties, we resolve any factual disputes in favor of Exel as the nonmoving party. **Chenault**, 36 S.W.3d at 56. Therefore, we take as true the allegations in McDonald's affidavit that Pinnacle's credit application was sent to Exel's Memphis credit department and that Pinnacle speakers are available for purchase through "authorized dealers" in Tennessee.

Overall, from our review of the affidavits, we must conclude that Pinnacle's contacts with Exel's Memphis office prior to the negotiations leading up to the letter agreement at issue, were neither continuous nor systematic. Therefore, it would be improper to exercise general jurisdiction over Pinnacle to adjudicate a cause of action that did not arise out of these attenuated contacts.

We next address whether the facts are sufficient to permit the lower court to exercise specific jurisdiction over Pinnacle. To determine whether the circumstances warrant the exercise of specific jurisdiction, the Tennessee Supreme Court has directed courts to consider: "(1) the quantity of the contacts, (2) their nature and quality, and (3) the source and connection of the cause of action with those contacts." **J.I. Case Corp. v. Williams**, 832 S.W.2d 530, 532 (Tenn. 1992) (citing **Masada**, 697 S.W.2d at 332). "[L]esser factors" to consider include "the interest of the forum state and convenience." **Id.**

---

[2]Exel cites no authority for its assertion that Tennessee Code Annotated § 20-2-214(6) permits a Tennessee court, *ceteris paribus*, to exercise general jurisdiction over a foreign corporation with no registered agent in this State. *See* Robert Banks, Jr., *The Future of General Jurisdiction in Tennessee*, 27 U. Mem. L. Rev. 559, 585–86 (1997).

Overall, we must look at whether Pinnacle directed its activities with respect to the letter agreement at Tennessee such that it "should reasonably anticipate being haled into court" in this State. *See Masada*, 697 S.W.2d at 334. The U.S. Supreme Court in *Burger King* noted a division among lower courts "respecting whether and to what extent a contract can constitute a 'contact' for purposes of due process analysis." *Burger King*, 471 U.S. at 478. The *Burger King* court acknowledged its past rejection of "mechanical tests" and "conceptualistic . . . theories" based on the place of contracting or performance. *Id.* (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316 (1943)). Instead, circumstances to be considered include the negotiations leading up to the contract, contemplated future consequences, the terms of the contract, and the parties' course of dealing, in order to determine whether "the defendant purposefully established minimum contacts with the forum." *Id.* at 479. Therefore, we look to these factors in evaluating the contacts connected with the letter agreement.

In this case, the negotiations leading up to the letter agreement were held via email, telephone, and facsimile. Because Pinnacle had fallen behind on its payments, Exel initiated the negotiations. The agreement itself indicates that Pinnacle was to send its payments to Exel's bank in Dallas, Texas. The letter agreement does not contain either a forum selection clause or a clause indicating that the agreement was reached in a particular forum. It provides only that, in the event of Pinnacle's default on any scheduled payments, Exel could accelerate the balance due and pursue "any and all legal methods to collect the balance due." Thus, the negotiations were initiated by Exel, and the only aspect of them that took place in Tennessee occurred on Exel's end. Moreover, on its face, the letter agreement appears to contemplate few, if any, intended consequences in Tennessee.

In support of its argument, Exel cites *William W. Bond, Jr. & Assocs., Inc. v. Montego Bay Dev. Corp.*, 405 F. Supp. 256 (W.D. Tenn. 1975). In *Bond*, the plaintiff, a Tennessee corporation, and the defendants, all in Maryland, entered into a contract in which the plaintiff agreed to prepare building plans for a hotel that was to be built in Maryland. *Id.* at 257. The Maryland defendant initially solicited the Tennessee plaintiff's services by telephone. *Id.* at 259. As set forth in the opinion, the contract between the parties was mailed to the Maryland defendants in the form of a letter. It stated:

> This agreement has been negotiated and executed in the State of Tennessee and shall be construed and interpreted in accordance with the laws of that State. If this agreement is acceptable to you, please indicate your acceptance by executing below in the appropriate space.

*Id.* at 258. The defendants signed the letter in Maryland. *Id.* at 259. When the plaintiff did not receive payment for its services, it filed a lawsuit against the Maryland defendants in a Tennessee court. The Tennessee court ultimately held that the exercise of jurisdiction over the Maryland defendants would comport with due process. *Id.* at 260.

The facts in *Bond* are distinguishable from the facts in the present case in at least two important respects. First, the Maryland defendants in *Bond* solicited the Tennessee plaintiff's services. In the instant case, the initial contact between Pinnacle and Exel, as well as the negotiations leading up to the letter agreement at issue, were initiated by Exel. The plaintiff's

unilateral action, which creates a relationship with the nonresident defendant, "cannot satisfy the requirement of contact with the forum State." *Helicopteros*, 466 U.S. at 417 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Second, the contract in *Bond* stated clearly that it was negotiated in Tennessee, and that it was to be construed in accordance with Tennessee law. The letter agreement in this case contains no such provisions, and evinces no intent to use Tennessee courts for the adjudication of any controversy. Under these circumstances, we must conclude that the facts in *Bond* are substantially different from the facts in this case.

From the affidavits submitted by the parties, we cannot say that, in negotiating and executing the letter agreement, Pinnacle directed its activities at Tennessee such that it should reasonably anticipate being "haled into court" in Tennessee. *Masada*, 697 S.W.2d at 334. Under these circumstances, we find no error in the trial court's decision to decline to exercise jurisdiction over Pinnacle.

The decision of the trial court is affirmed. The costs of this appeal are taxed to the appellant, Exel Transportation Services, Inc., and its surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE