IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**FILED**

**September 3, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

UNITED AGRICULTURAL SERVICES,
INC.,

      Plaintiff-Appellee,

                         Shelby Chancery No. 110127-3
Vs.                               C.A. No. 02A01-9812-CH-00353

**JOHN W. SCHERER, JR.,**

      Defendant-Apellant.

_____

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

Lenard Hackel of Memphis
For Appellee

Richard F. Vaughn of Memphis
For Appellant

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

     This appeal involves jurisdiction under the long-arm statute. Defendant/appellant, John

W. Scherer, Jr. (Scherer), appeals the order of the trial court awarding plaintiff/appellee, United

Agricultural Services, Inc. (Ag Services), damages for breach of contract.

Ag Services is a Tennessee corporation based in Memphis that performs environmental site assessments and related activities. Scherer, a resident of Michigan, is the president of Michigan Apple Corporation, Inc. (Michigan Apple), a foreign corporation doing business in Michigan.

In 1994, Michigan Apple attempted to obtain a loan from American Farm Mortgage Company for the purpose of buying property in Michigan. American Farm Mortgage in turn wanted to sell Michigan Apple's note to Prudential. Prudential required a Phase I environmental site assessment on the property prior to going through with the deal. Ag Services was one of several companies that the involved mortgage companies used for environmental inspection purposes. A member of Prudential's mortgage department in Chicago contacted Ag Services in regard to performing a site inspection on the land Michigan Apple wished to purchase.

Ag Services then contacted American Farm Mortgage in Kentucky and was advised that environmental services were needed by Michigan Apple in order to obtain a loan, and that Ag Services should contact Michigan Apple. The president of Ag Services, Roger Hanes (Hanes), then contacted Scherer in Michigan by telephone.[1] Arrangements were made and employees from Ag Services traveled to Michigan to inspect the property on three separate occasions. On each occasion, the Ag Services employees returned to Memphis where they did the analysis, compilation, interpretation, and preparation of a report for use by Michigan Apple in obtaining its loan. The report on the property was completed in September 1994 and specified that clean up of the property was required. Ag Services again traveled to Michigan and performed the clean-up operation, completing it in the spring of 1995.

After clean-up, Ag Services presented a final report, the loan from American Farm Mortgages came through, and Michigan Apple purchased the property. At the time of closing, Ag Services was not paid for the work it had provided. Hanes testified that it is customary for the purchaser of the land to pay the fees for inspection, and at the time of doing the work, he and Scherer, on behalf of Michigan Apple, discussed the fees for the various phases of work. The parties later agreed to a payment plan, and Ag Services mailed Scherer a promissory note which

---

[1]It was disputed whether Scherer contacted Ag Services first or *vice-versa*. However, Scherer by affidavit stated that Ag Services initially contacted him. Roger Hanes, president of Ag Services, testified at trial that he was unsure whether he contacted Scherer first or not.

he signed as president of Michigan Apple and personally guaranteed. The note stated in pertinent part:

**PROMISSORY NOTE**

**$36,816.00**                                **MARCH 4, 1996**

**Memphis, Tennessee**

FOR VALUE RECEIVED, the undersigned, Michigan Apple Corp. Inc. . . . promises to pay to the order of United Agricultural Services, Inc., . . . the principal sum of <u>Thirty six thousand, eight hundred sixteen dollars</u> ($36,816.00), together with interest thereon from date hereof until paid, at the rate of twelve percent (12%) per annum. Payment to be paid in six monthly installments, ($6,136.00) first payment to be due and payable on March 25, 1996 and final payment due August 25, 1996 . . . .

\*          \*          \*

John Scherer, Jr., General Manager and Part-Owner, so warrants that he is duly authorized by Michigan Apple Corp., Inc. to sign this note on behalf of the Corporation. This note, also, is secured by the personal guarantee of John Scherer, Jr.

\*          \*          \*

This note is made and executed under, and is in all respects governed by, the laws of the State of Tennessee.

Scherer and Michigan Apple failed to make timely payments on the note, and on October 28, 1997, Ag Services filed suit against Scherer in Shelby County Chancery Court for breach of contract. Scherer filed a motion to dismiss based on lack of *in personam* jurisdiction by the courts of Tennessee. The motion to dismiss was denied but the chancellor granted Scherer an interlocutory appeal. However, this Court denied the application.

On October 6, 1998, Scherer filed an answer to the complaint, again asserting lack of jurisdiction. After a nonjury trial, the chancellor entered an order on October 28, 1998 awarding a judgment to Ag Services in the amount of $43,416.00 in damages and $4,000.00 in attorneys' fees. The chancellor found in pertinent part:

That initially there were contacts made in such a fashion for the underlying contract that would not give rise to jurisdiction to this Court. However, the Court finds that, after the parties continued their discussion about the disagreement on the payment of that underlying contract, the Defendant had communications with the Plaintiff in this cause knowing that the Plaintiff was here in Tennessee, and the Defendant asked the Plaintiff, who was here in Tennessee, to prepare the underlying document that is before the Court today, the promissory note. He knew that that

3

document would be prepared in Tennessee, and it would be sent to him for his signature, which he did.

He, therefore, in this Court's opinion, had such contact with the state of Tennessee under those circumstances that were at least minimal contacts such that would reasonably place him on notice that by taking that extra act of creating this document to be in the free flow of commerce that it was one that would reasonably cause it to be haled into the state of Tennessee.

Accordingly, therefore, the Court finds that this Court has jurisdiction over this matter.

Scherer has appealed, and the only issue for review is whether the Shelby County Chancery Court had *in personam* jurisdiction over him under the Tennessee Long-Arm Statute.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Scherer, as a nonresident of Tennessee, is sued pursuant to the provisions of T.C.A. § 20-2-214(a) (1994), which provide in pertinent part:

> **20-2-214. Jurisdiction of persons unavailable to personal service in state--Classes of action to which applicable.**--(a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> (1) The transaction of any business within the state;
>
> * * *
>
> (6) Any basis not inconsistent with the constitution of this state or of the United States;

In addition, T.C.A. § 20-2-223 (Supp. 1998) provides in pertinent part:

> **20-2-223. Personal jurisdiction based on conduct.** - (a) A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as to a claim for relief arising from the person's:
> (1) Transacting any business in this state;
> (2) Contracting to supply services or things in this state;
>
> *          *          *
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against that person.

4

The Tennessee long-arm statute confers jurisdiction to the full extent allowable under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. *Southland Express, Inc. v. Scrap Metal Buyers of Tampa, Inc.*, 895 S.W.2d 335, 338 (Tenn. App. 1994).

In determining whether a court may assert *in personam* jurisdiction over a nonresident defendant, due process requires that the defendant have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531 - 32 (Tenn. 1992). The Due Process Clause requires "fair warning that a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d 683 (1977) (Stevens, J. concurring)).

Courts recognize two types of in personam jurisdiction: general jurisdiction and specific jurisdiction. *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989); *Shoney's Inc. v. Chic Can Enter.*, 922 S.W.2d 530, 537 (Tenn. App. 1995). When a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the state is exercising "general jurisdiction" over the defendant. *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S. Ct. 1868, 1872 n. 9, 80 L. Ed. 2d 404 (1984). When a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising "specific jurisdiction" over the defendant. *Id.* at 414 n. 8, 104 S. Ct. at 1872 n. 8.

For a court to exercise general *in personam* jurisdiction over a nonresident defendant without violating the requirements of the Due Process Clause, the proof must show that the defendant maintains "continuous and systematic" contacts with the foreign state. *International Shoe Co.*, 326 U.S. at 317, 66 S. Ct. at 159; *J.I. Case Corp.*, 832 S.W.2d at 532. "While it has been held in cases . . . that continuous activity of some sort within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity, there have been instances in which the continuous corporate operations within a state were thought to be so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe Co.*, 326 U.S. at 318, 66 S.Ct. at 159. There is no basis for general personal jurisdiction in this case.

However, in the absence of general jurisdiction resulting from continuous and systematic contacts with the forum state, specific *in personam* jurisdiction still may be found when a commercial actor purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities.

5

*Burger King Corp.*, 471 U.S. at 472, 105 S. Ct. at 2182; *J.I. Case Corp.*, 832 S.W.2d at 532. In such a case, "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S. Ct. at 567; *Shoney's, Inc.*, 922 S.W.2d at 536.

When a controversy is related to or "arises out of" a defendant's contacts with the forum, the United States Supreme Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414, 104 S. Ct. at 1872 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 2579, 53 L. Ed. 2d 683 (1977)).

In *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985), the Tennessee Supreme Court faced the question of jurisdiction of a malpractice suit against a Texas lawyer who had prepared an inaccurate deed for the transfer of real estate in Memphis, Tennessee at the request of a Tennessee resident. *Id.* at 333. The Court stated:

> A three-pronged test had been developed to determine the outer limits of personal jurisdiction based on a single act: the defendant must purposefully avail himself of the privilege of acting in or causing a consequence in the forum State; the cause of action must arise from the defendant's activities there; and defendant's acts or consequences must have a substantial connection with the forum to make the exercise of jurisdiction reasonable. *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Subsection (6) [of the Tennessee long-arm statute] changed the long-arm statute from a "single act" statute to a "minimum contacts" statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process. *Shelby Mutual Ins. Co. v. Moore*, 645 S.W.2d 242, 245 (Tenn. App. 1981). That decision, quoting extensively from *Gullett v. Qantas Airways Ltd.*, 417 F.Supp. 490 (M.D. Tenn. 1975), noted that the *Mohasco* test was now too restrictive. The *Moore* court noted that three primary factors are to be considered in determining whether the requisite minimum contacts were present: the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts. Two lesser factors to be considered are the interest of the forum State and convenience. The *Moore* court concluded:
>
> > The phrase "fair play and substantial justice" must be viewed in terms of whether it is fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action. In each case, the quality and nature of those activities in relation to the fair and orderly administration of the law must be weighed. As stated above in *Qantas*, this must involve some subjective value judgment by the courts.
>
> 645 S.W.2d at 246.

*Masada Inv. Corp.*, 697 S.W.2d at 334-35. The *Masada* Court concluded that "[b]y willfully and knowingly choosing to prepare legal documents which would be filed in Tennessee and be of great consequence here, Allen purposely availed himself of the privilege of doing business within this state." *Id.* at 335. The Court stated that

6

"Tennessee has substantial interest in the outcome of this litigation and is the most convenient forum since this action involves a Tennessee defendant, WTFF, Tennessee property, and is controlled by Tennessee law." *Id.*

In *Burger King Corp.*, the United States Supreme Court stated:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478, 79 L. Ed. 2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984). . . . And with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities. *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S. Ct. 927, 929, 94 L. Ed. 1154 (1950). See also *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222-223, 78 S. Ct. 199, 200-201, 2 L. Ed. 2d 223 (1957).

> \* \* \*

> In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-1240, 2 L. Ed. 2d 1283 (1958):

> > "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 774, 104 S. Ct. at 1478; *World-Wide Volkswagen Corp. v. Woodson*, *supra*, 444 U.S. at 299, 100 S. Ct. at 568, or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, *supra*, 466 U.S. at 417, 104 S. Ct. at 1873. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. *McGee v. International Life Insurance Co.*, *supra*, 355 U.S. at 223, 78 S. Ct. at 201; see also *Kulko v. California Superior Court*, *supra*, 436 U.S. at 94, n. 7, 98 S. Ct. at 1698, n. 7. Thus where the defendant "deliberately" has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc.*, *supra*, 465 U.S. at 781, 104 S. Ct. at 1481, or has created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia*, 339 U.S. at 648, 70 S. Ct. at 929, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*     *     *

*Burger King Corp.*, 471 U.S. at 472-76, 105 S. Ct. at 2182-84.

In the present case, the trial court found that the initial interaction between the parties to this suit involving the land assessment report and subsequent cleanup did not meet the requirements for minimum contacts to allow the courts of Tennessee jurisdiction. However, the trial court also found that subsequent to the initial interaction, the parties entered into a contract whereby Scherer knew Ag Services was located in Tennessee, and knew the promissory note would be prepared in Tennessee. These factors, the trial court found, were sufficient to satisfy the minimum contacts requirement, and give Tennessee courts jurisdiction over Scherer.

Technically, we agree with the trial court's finding as it pertains to Scherer in regard to initial interactions of the parties. The proof in this case is that Ag Services and Michigan Apple, acting through Scherer, made an arrangement whereby Ag Services would perform a service in connection with the environmental requirements necessary for a loan that Scherer's corporation was trying to obtain. The work contracted for required visits to Michigan but more importantly Ag Services did the field work in Michigan then returned to its office in Memphis to perform necessary analyses, compilations, interpretations, and other work in order to prepare and submit the necessary reports. It is undisputed that this work was all done in the Memphis office. This case is somewhat analogous to the factual situation in *Bond v. Montego Bay Dev. Corp.*, 405 F. Supp. 256 (W.D. Tenn. 1975). In that case, Bond, an architect, contracted to perform architectural services for the defendant. The contract was signed by the defendants in Maryland, and the architect went to Maryland for the on-site work. However, the architect returned to his Memphis office to prepare the plans and specifications for this out-of-state project. Although no representative of the defendants ever came to the State of Tennessee, the Court noted that it was foreseeable by the parties that at least a substantial part of the work would be performed in the Memphis office. The Court said:

> That no representative of the defendants was ever physically in Tennessee is not a controlling consideration. *Mohasco, supra* at 382. As stated in *Mohasco, supra* at 382-383: '. . . business is transacted in a state when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of the state; and the defendant has purposefully availed himself of the opportunity of acting there if he should have reasonably foreseen that the transaction would have consequences in that state.' Here, a business transaction set in motion by defendants had a realistic, foreseeable and considerable impact on commerce in Tennessee. Thus, the first criterion of *Mohasco* is met, that defendants have purposefully availed themselves of the privilege of acting or causing a consequence in the forum state.

405 F. Supp. at 259-260.

Admittedly, in the instant case the contract was between the foreign corporation and Ag Services, but the defendant, Scherer, was part and parcel of the negotiations and activities leading to the contract. Scherer acted as agent

8

for the corporation and his action created a consequence in Tennessee. Although Scherer could not be subjected to this jurisdiction for his activity in negotiating the contract as agent, the corporation would meet the minimum contacts test.

However, there is a more compelling reason for establishing personal jurisdiction over Scherer. Michigan Apple's note paid for the services under the contract and was guaranteed by the defendant Scherer. The note specifically provided for payment in the State of Tennessee. Thus, Scherer guaranteed the payment of sums to be paid in Tennessee by virtue of the note. This comes within the provisions of T.C.A. § 20-2-223(a)(2) as a contract to supply "things" in this state.

The claim for relief by Ag Services arises from the default in the payment of this note. *See* T.C.A. § 20-2-223(b). The note was prepared in Tennessee, is governed by Tennessee law by the terms thereof, and payments were to be made in Tennessee. We believe this satisfies the requirement of T.C.A. § 20-2-223.

The judgment of the trial court is affirmed. Costs of the appeal are assessed against the appellant. The case is remanded to the trial court for such further proceedings as may be necessary.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

9