FILED
08/28/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 26, 2019 Session

## CORPORATE FLIGHT MANAGEMENT, INC. v. TAL AVIATION, S.A. ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 17CV-1549      Barry R. Tidwell, Judge**

_____

### No. M2018-01492-COA-R3-CV

_____

The issue in this appeal is whether the Tennessee court had personal jurisdiction over the Defendant. A Luxemburg company contracted with a French citizen to provide the citizen with a certain number of flight hours on the company's private jets; the contract provided that, if the company did not have a jet available, it would procure a private jet from a third party. After providing a jet for the citizen to travel from Luxemburg to Turks and Caicos, the company did not have a jet available to return the citizen to his home, so the company engaged a charter aircraft company based in Tennessee to fly the citizen home in one of the Tennessee company's jets. When the Luxemburg company did not pay for the flight, the Tennessee company filed this breach of contract action against the Luxemburg company and the French citizen in Rutherford County Chancery Court. The French citizen moved to dismiss the action against him on the ground that the Tennessee court lacked personal jurisdiction over him; the motion was granted. The Tennessee company appeals, contending that the court had personal jurisdiction over the French citizen because the Luxemburg company acted as the citizen's agent and its contacts with Tennessee were thereby imputed to him for jurisdictional purposes. We conclude that the trial court correctly determined that it did not have personal jurisdiction over the French citizen and accordingly affirm the judgment granting the motion to dismiss.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Ron Pursell, Edward A. Hadley, and Brent A. Kinney, Nashville, Tennessee, for the appellant, Corporate Flight Management, Inc.

George H. Cate, III, Edmund S. Sauer, and Kayleigh E. Butterfield, Nashville, Tennessee, for the appellees, Patrice Charles-Louis Mourruau, Tal Aviation, S.A., and NOAFLY Aviation, S.A.

# OPINION

## I. FACTS AND PROCEDURAL HISTORY

NOAFLY Aviation, S.A., a company organized under the laws of Luxembourg and with its principal place of business there, provides charter aircraft services. On November 10, 2016, NOAFLY entered into a contract ("the NOAFLY Contract") with Patrice Charles-Louis Mourruau, in which NOAFLY agreed to provide Mr. Mourruau 55 flight hours on a "Legacy 650 type aircraft." Under the contract, if Mr. Mourruau requested a flight and a Legacy 650 was unavailable, NOAFLY would provide a Global 6000 aircraft. If neither a Legacy 650 nor a Global 6000 was available, NOAFLY was "required to provide a replacement aircraft of the same type or a higher category than the [Legacy 650]." The contract allowed NOAFLY to obtain an aircraft and charter services from a third party, if necessary.

On May 7, 2017, Mr. Mourruau flew from Luxembourg to Turks and Caicos on an aircraft which NOAFLY procured for Mr. Mourruau's use from a third party. Mr. Mourruau was scheduled to return to Luxembourg on May 13 on the same aircraft; however, that aircraft was not available for his return. On May 12, NOAFLY asked Corporate Flight Management, Inc. ("CFM")[1] for a quote on an aircraft to fly Mr. Mourruau from Turks and Caicos to Luxembourg; CFM quoted $137,823.67 for the flight and provided NOAFLY with a contract that day. The Complaint alleges that NOAFLY "purported to attempt to pay CFM through wire transfer on May 12"; payment was not successful.[2] CFM provided the flight on May 13, and representatives of NOALFY and CFM signed the contract ("the CFM contract") on May 17.

Sometime after May 17,[3] CFM filed this action in Rutherford County Circuit Court; CFM filed a Second Amended Complaint against NOAFLY and Mr. Mourruau on February 26, 2018, asserting, *inter alia*, that NOAFLY had breached the CFM Contract by failing to pay any of the amount due under the Agreement and that NOAFLY had acted as Mr. Mourruau's agent in executing the Agreement.[4] Mr. Mourruau moved the

---

[1] CFM is a corporation organized under the laws of the State of Tennessee. CFM's principal place of business is in Smyrna, Rutherford County, Tennessee. CFM provides charter aircraft service in the U.S. and abroad.

[2] The complaint does not allege, and the record does not otherwise show, why payment was not successful.

[3] The original complaint was not included as part of the technical record on appeal; accordingly, the date of initiation of this action is unclear.

[4] The record on appeal begins with the Second Amended Complaint, to which CFM attached several documents, including the contract; a document titled "Outward Payment," which appears to be a wire

court to dismiss him from the suit pursuant to Tennessee Rule of Civil Procedure 12.02(2), asserting that the trial court did not have personal jurisdiction over him; in support of the motion, Mr. Mourruau attached his declaration and a copy of the contract he entered into with NOAFLY. CFM responded, contending that the court had specific personal jurisdiction over Mr. Mourruau because NOAFLY was acting as his agent and NOAFLY's contacts with Tennessee "bound Mr. Mourruau to the jurisdiction of" the court; in support of the argument, CFM filed the affidavit of its sales manager, Sybilla Slavin.

In an order entered May 25, 2018, the trial court ruled it could not exercise general or specific personal jurisdiction over Mr. Mourruau and dismissed him from the suit. CFM appeals, contending that the trial court erred in holding that Mr. Mourruau was not subject to personal jurisdiction in Rutherford County.

## II. ANALYSIS

"'The authority of courts to exercise personal jurisdiction over nonresident defendants is circumscribed by the Due Process Clause of the Fourteenth Amendment,'" which is co-extensive with the due process protections of the Tennessee Constitution. *First Community Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 383 (Tenn. 2015) (quoting *Gordon v. Greenview Hosp., Inc.,* 300 S.W.3d 635, 646 (Tenn. 2009)). "Our General Assembly has passed long-arm statutes[5] which expand the jurisdictional reach of Tennessee courts "'as far as constitutionally permissible.'" *Id.* (quoting *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 740 (Tenn. 2013)).

---

transfer from NOAFLY to CFM, and an email chain between CFM and NOAFLY concerning scheduling of and payment for the Flight.

[5] As our Supreme Court explained in *First Community Bank, N.A. v. First Tennessee Bank, N.A.*:

> Tennessee Code Annotated section 20-2-214(a) states, "Persons who are nonresidents of this state ... are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from ... (6) [a]ny basis not inconsistent with the constitution of this state or of the United States." Additionally, Tennessee Code Annotated section 20-2-225 provides that Tennessee courts may exercise jurisdiction on "any other basis authorized by law" or on "[a]ny basis not inconsistent with the constitution of this State or of the United States." Therefore, [b]oth of Tennessee's long-arm statutes . . . derive their scope from the Tennessee and Federal Constitutions, and the reach of those statutes "cannot extend beyond the limits set by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, in analyzing the due process constraints on a court's exercise of personal jurisdiction over nonresident defendants, we must look for guidance to the decisions of both state and federal courts interpreting the due process requirements of the Tennessee and United States Constitutions.

489 S.W.3d 369, 384 (Tenn. 2015).

There are two general categories of personal jurisdiction: general[6] and specific. [S]pecific jurisdiction:

> exists when a defendant has minimum contacts with the forum state and the cause of action arises out of those contacts.
>
> ***
>
> Determining whether a forum state may exercise specific personal jurisdiction over a nonresident defendant is a two-step analysis which requires a court to analyze first whether the defendant's activities in the state that gave rise to the cause of action constitute sufficient minimum contacts with the forum state to support specific jurisdiction and, if so, whether the exercise of jurisdiction over the nonresident defendant is fair.
>
> ***
>
> [I]n order for a nonresident defendant's contacts with the forum state to be sufficient to give rise to personal jurisdiction there, those contacts must arise out of the defendant's own purposeful, deliberate actions directed toward the forum state.
>
> ***
>
> In other words, "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"

---

[6] General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.,* domicile)." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "When a state exercises personal jurisdiction over a defendant in a lawsuit not arising out of or related to the defendant's contacts with the forum, the state is exercising general jurisdiction over the defendant." *Law Offices of Hugo Harmatz v. Dorrough*, 182 S.W.3d 326, 330 (Tenn. Ct. App. 2005) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 414 n. 9 (1984); *United Agric. Servs., Inc. v. Scherer*, 17 S.W.3d 252, 256 (Tenn. Ct. App. 1999)). "For a court to exercise personal jurisdiction of a general nature over a nonresident defendant, the proof must show that the defendant maintains 'continuous and systematic' contacts with the foreign state." *Id.* (citing *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 317 (1945); *Scherer,* 17 S.W.3d at 256).

At the hearing on Mr. Mourrau's Motion to Dismiss, CFM admitted that the trial court did not have general personal jurisdiction over Mr. Mourrau; accordingly, we do not address whether there was a basis for the trial court to exercise general jurisdiction over Mr. Mourruau.

The defendant's connection with the forum state must be not only intentional, but also "substantial" enough to give rise to jurisdiction. In considering whether the defendant's contacts with the forum state are substantial enough to give rise to specific personal jurisdiction, we must consider the quantity of the contacts, their nature and quality, and the source and connection of the cause of action with those contacts.

*Id.* at 388-89 (internal citations omitted).

A defendant may challenge personal jurisdiction by filing a motion to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12.02(2) of the Tennessee Rules of Civil Procedure. Our Supreme Court explained the procedure when such a motion is filed in *First Community Bank*:

When a trial court expresses an intent to rule on a motion to dismiss without an evidentiary hearing, a defendant "may, but is not required to, support the motion with affidavits or other evidentiary materials." When a defendant supports its 12.02(2) motion with affidavits, the burden is on the plaintiff to make a "prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence." Dismissal of the complaint pursuant to a defendant's Rule 12.02(2) motion "is proper only if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case for personal jurisdiction."

489 S.W.3d at 382 (internal citations omitted); *Sumatra*, 403 S.W.3d at 769; *Gordon*, 300 S.W.3d at 644.[7] A trial court is not "obligated to accept as true factual allegations . . . that are controverted by more reliable evidence and plainly lack credibility." *Sumatra*, 403 S.W.3d at 735. Whether a "prima facie showing of personal jurisdiction over the

---

[7] The court in *First Community Bank* continued:

Tennessee courts have not specifically defined the prima facie requirement in the context of establishing personal jurisdiction. Federal courts have defined a "prima facie showing of jurisdiction" as requiring that the plaintiff establish "with reasonable particularity sufficient contacts between [the defendant] and the forum state." We find the definitions utilized by the federal courts in this context to be persuasive. Accordingly, we adopt a similar definition of a prima facie case of personal jurisdiction. Under Tennessee law, the factual allegations in the plaintiff's complaint must establish sufficient contacts between the defendant and this state with reasonable particularity.

489 S.W.3d at 383.

defendant" has been shown "presents a question of law." *First Cmty. Bank, N.A.*, 489 S.W.3d at 382 (citations omitted).[8]

In support of his motion, Mr. Mourruau filed a declaration, a pertinent portion of which states:

> 2. I am a citizen of France and reside at 3 Rue Sigefroi, L-2536 Luxembourg. I have never visited, conducted business in, or been physically present in the state of Tennessee. I have never transacted any business with a resident of Tennessee. I have no assets, no relatives, and no other contacts in Tennessee. To the best of my recollection, I had never even corresponded or communicated with anyone in Tennessee before I received service of the Second Amended Complaint ("Complaint") in this case.

This shifted the burden to CFM to establish a prima facie showing of jurisdiction. *First Cmty. Bank*, 489 S.W.3d at 382; *Sumatra*, 403 S.W.3d at 739; *Chenault v. Walker*, 36 S.W.3d 45, 56 (Tenn. 2001).

CFM does not argue that Mr. Mourruau *himself* had sufficient minimum contacts with Tennessee, but contends that "[Mr.] Mourruau is subject to personal jurisdiction based on the actions and contractual undertakings of his agent, NOAFLY, and the benefits accruing to Mourruau from CFM's justifiable reliance thereon." Accordingly, the threshold issue is whether NOAFLY was Mr. Mourruau's agent. To meet its burden, CFM relies upon the affidavit of its sales manager, Sybilla Slavin, the CFM contract, and Article 6 of the NOAFLY contract.

Agency is a relationship between a "principal" and an "agent" in which the principal gives the agent authority to "act on the principal's behalf," "subject to the principal's control," and the agent "consents to do so." *Savage v. Cty. of Memphis*, 464 S.W.3d 326, 332 (Tenn. Ct. App. 2015) (citing *Morrison v. Allen*, 338 S.W.3d 417, 450 (Tenn. 2011)). "There are two bases under which the common law credits the legal

---

[8] CFM argues that "[a] jury, not the court, must decide whether the facts establish personal jurisdiction over [Mr. Mourruau]." However, as we noted in *Gordon v. Greenview Hospital*, a Rule 12.02(2) motion to dismiss for lack of personal jurisdiction presents "a threshold issue that normally should be adjudicated early in the proceeding because, if the motion is granted, it will produce an overall savings in time and resources and will also avoid delay in the disposition of cases." 300 S.W.3d 635, 643 (Tenn. 2009) (citing Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure §* 1349, 56-57 (3d ed. 2004); *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 739 (Tenn. 2013). Accordingly, it is appropriate for the court to consider "affidavits of other evidentiary materials to support or oppose" the Rule 12.02(2) motion. *Gordon*, 300 S.W.3d at 644 (citing Chenault v. Walker, 36 S.W.3d 45, 55 (Tenn. 2001)).

consequences of an agent's actions to the principal: actual authority and apparent authority." *Id*. CFM contends that Mr. Mourruau and NOAFLY had both an actual and apparent agency relationship.

### A. Actual Authority

CFM contends that Article 6 of the NOAFLY contract, which sets out NOAFLY's obligations in the event it must use a replacement aircraft, operates to appoint NOAFLY as Mr. Mourruau's agent. Article 6 states:

**ARTICLE 6: Aircraft replacement**

1. In the event of mechanical problems specific to the aircraft, damage, unavailability of the Aircraft, or continuation of the flight's itinerary, NOAFLY is required to provide a replacement aircraft of the same type or a higher category than the Aircraft. In any of the cases referred to in paragraph 1, NOAFLY shall be responsible for transporting the passengers and their luggage to their destination.

2. NOAFLY reserves the right to change aircraft or to modify any flight plan or the maximum weight of the aircraft if the change is essential due to technical requirements related to airport infrastructure.

3. NOAFLY undertakes to inform the Client of this as soon as possible, with the Client therefore reserving the right to cancel his flight request and, in the cases referred to in paragraph 1, with no penalty whatsoever.

4. The Client accepts the exclusive authority of the flight deck crew responsible for the Aircraft, regarding any decision relating to the safety of the aircraft, passengers and crew. The decision whether or not to complete the flight and the choice of landing point are the exclusive authority of the flight deck crew.

Upon our review and analysis, this argument is without merit.

Article 6 does not expressly appoint or authorize NOAFLY to act as Mr. Mourruau's agent, and under the article NOAFLY has authority over almost every aspect of the provision of flight services. Mr. Mourruau is not given the ability to pick or in any way control the manner of choosing the replacement aircraft; the only authority Mr. Mourruau has under Article 6 is the right to cancel the flight in the event it becomes necessary to procure a replacement aircraft.

Mr. Mourrau's declaration supports this conclusion:

15. From the time I boarded the flight and until I completed my trip back to Luxembourg, I flew on the aircraft based on the understanding that NOAFLY had arranged with a third party to provide the aircraft to me pursuant to Articles 6 and 7 of the NOAFLY Contract and in order to fulfill NOAFLY's obligation to provide me with up to 55 flight hours for which I had paid 300,000.00 Euros.

16. Throughout my dealings with NOAFLY, I understood that any aircraft it provided to me (including the flight at issue here) was in satisfaction of its obligation to provide me up to 55 flight hours for which I had paid 300,000.00 Euros. I never was party to any subcontract (or any other contract) NOAFLY entered into with any charter company or any other third party, and I never agreed to pay anyone for flights NOAFLY arranged for me beyond the 300,000.00 Euros I paid to NOAFLY pursuant to the NOAFLY Contract.

17. More specifically, I am not a party to the "Quote for Aircraft Services" attached to the Complaint, and I never agreed to and never approved the terms and conditions contained therein. I never saw or heard about the Quote until I was served with the Complaint on March 13, 2018. At no point did I ever authorize NOAFLY to enter into the Quote or any other agreement on my behalf as a broker or agent, nor did I ever agree to accept any financial or other responsibility for satisfying NOAFLY's obligations under the Quote or any other agreement with Plaintiff or any other third party.

This article does not lead us to conclude that NOAFLY was acting with Mr. Mourruau's authority but, rather, that it was acting on its own authority to satisfy its obligations.

In the CFM contract, NOAFLY agreed that NOAFLY had "been appointed as an agent of the end user [Mr. Mourruau] as defined by the U.S. Department of Transportation (DOT)"; CFM argues that this statement is relevant to this issue.[9] We

---

[9] The CFM contract contained the following provision:

14. Broker Policy. In order to ensure proper financial protection for the consumer, any broker executing this agreement agrees that they have been appointed as an agent of the end user as defined by the U.S. Department of Transportation (DOT), is not holding out or advertising to the public as a direct or indirect air carrier, is not acting as a ticket agent, and is in compliance with all applicable DOT regulations. Broker also agrees to remit all applicable taxes and fees associated with the flights to be operated under this Agreement.

disagree. "An agent's authority must be traceable to the principal and may not be shown by his own statements or merely by proving that he claimed or undertook to act as an agent. *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984); *see also Savage*, 464 S.W.3d at 336 ("An agent's subjective belief alone is not sufficient to establish implied authority where it is not based on a reasonable interpretation of the principal's manifestation in light of his objectives and other facts known to the agent."). Accordingly, without a corresponding action or statement by Mr. Mourruau, NOAFLY's representation that it was acting as the agent of Mr. Mourruau cannot suffice to establish that it had the actual authority to do so.

Accordingly, we conclude that the record does not show that Mr. Mourruau explicitly or implicitly delegated actual authority to NOAFLY.

### B. Apparent Authority

"Even where the principal has not given the agent actual authority to take a certain course of action, the agent may still bind the principal if he had apparent authority." *Savage*, 464 S.W.3d at 333. "Apparent authority is essentially agency by estoppel, in that its creation and existence depends on some conduct by the principal that will preclude him from denying liability for the acts of the agent." *Id.* It "is established through the acts of the principal rather than those of the agent or through the perception of a third party." *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 433 (Tenn. 2008) (citations omitted). As our Supreme Court explained in *Southern R.R. Co. v. Pickle*:

> The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent.

197 S.W. 675, 677 (Tenn. 1917). Generally, there are three elements that a party must prove to establish that an entity was the 'apparent agent' of another:

> (1) the principal actually or negligently acquiesced in another party's exercise of authority;

> (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; *and*

(3) the third person relied on this apparent authority to his or her detriment.

*Boren*, 251 S.W.3d at 432-33 (citations omitted).

In support of its response to the motion to dismiss, CFM filed the affidavit of Sybilla Slavin, who stated, in pertinent part:

> 3. In my role as Sales Manager for Corporate Flight Management, I communicated with representatives of NOAFLY on several occasions to arrange for CFM to fly Mr. Patrice Charles-Louis Mourruau and his guests from Turks & Caicos to Luxembourg. NOAFLY appeared to be acting as an agent for Mr. Mourruau by arranging for the charter of aircraft N989SF on behalf of Mr. Mourruau. NOAFLY represented that it was authorized by Mr. Mourruau to schedule this flight for him with CFM. CFM provided the aircraft, crew, and all services incidental to the flight. NOAFLY merely served as an agent to arrange and schedule the flight for Mr. Mourruau, and NOAFLY did not independently provide any aircraft, crew, or related services for the flight. When entering into the agreement with NOAFLY, I, acting on behalf of Corporate Flight Management, had a subjective, good faith belief that NOAFLY had the authority to act on Patrice Charles-Louis Mourruau's behalf and bind him to the terms of NOAFLY's contract with CFM. The flight was arranged specifically for Mr. Mourruau, and CFM entered into the agreement with NOAFLY specifically and solely for the purpose of providing this single flight to Mr. Mourruau.
>
> 4. Corporate Flight Management routinely communicates and enters into agreements with charter flight brokers, such as NOAFLY, whose customary terms of engagement require them to act as agents for their own clients and who, in such capacity, arrange to have Corporate Flight Management provide aircraft, crews, and incidental flight services for those clients.

This evidence does not lead us to conclude that Mr. Mourruau clothed NOAFLY with the authority to act on his behalf relative to the contract between CFM and NOAFLY. Ms. Slavin's Affidavit does not state that Mr. Mourruau interacted with CFM, that any CFM employee witnessed any interaction between Mr. Mourruau and NOAFLY upon which it could be inferred that NOAFLY had the authority to act for Mr. Mourruau, that Mr. Mourruau acquiesced in NOAFLY's contract with CFM, or, indeed, that CFM knew Mr. Mourruau or had any reason to rely on the authority which CFM contends NOAFLY had. While Ms. Slavin's affidavit states that NOAFLY represented that it was Mr. Mourruau's agent, "a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has

created the apparent authority." *Southern R.R. Co.*, 197 S.W. at 677; *see Dexter Ridge Shopping Ctr., LLC v. Little*, 358 S.W.3d 597, 609 (Tenn. Ct. App. 2010) ("The principal will not be deemed responsible for the acts of the putative agent where only the agent's own conduct has created the appearance of agency.")

CFM also argues that Mr. Mourruau ratified the CFM contract by flying on CFM's jet. Ratification is a "fundamental principle of agency law." *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). That principle states that "'[a] principal is bound neither by contracts made by a person not his agent, nor by those of his agent beyond the scope of his actual and apparent authority, which he has not ratified and is not estopped to deny.'" *Id*. at 270 (Tenn. 2001) (quoting *Bells Banking Co. v. Jackson Ctr., Inc.,* 938 S.W.2d 421, 425 (Tenn. Ct. App. 1996)). Ratification is predicated on a principal and agent relationship, which did not exist in this case. Moreover, "before ratification of an unauthorized transaction will be considered valid and binding, the principal must have full knowledge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction." *Id.* (quotations omitted). In his declaration, Mr. Mourruau, states "I never agreed to and never approved the terms and conditions contained therein. I never saw or heard about the Quote until I was served with the Complaint on March 13, 2018." For these reasons, the record will not support a conclusion that, because Mr. Mourruau flew on the jet which had been provided by CFM, he ratified the CFM contract.

## III. CONCLUSION

For the foregoing reasons, the trial court correctly concluded that it did not have personal jurisdiction over Mr. Mourruau, and we affirm the judgment dismissing him from this action.

_____
RICHARD H. DINKINS, JUDGE